IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GENERAL CONFERENCE CORPORATION
OF SEVENTH-DAY ADVENTISTS, et al.,

      Plaintiffs,

v.                                                                                 No. 06-cv-1207

WALTER MCGILL d/b/a
CREATION SEVENTH DAY
ADVENTIST CHURCH, et al.,

      Defendant.

_____

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AS TO THE PLAINTIFFS' MOTION
FOR SANCTIONS AND PERMANENT INJUNCTIVE RELIEF

_____

      The Plaintiffs, the General Conference Corporation of Seventh-day Adventists and the General Conference of Seventh-day Adventists, brought the instant trademark infringement action against the Defendant, Walter McGill, a pastor of an unincorporated association known as the Creation Seventh Day Adventist Church. After the Defendant repeatedly displayed an unwillingness to appear at several court-ordered mediation conferences, the Plaintiffs filed a Motion for Sanctions and Permanent Injunctive Relief. This Court referred this motion to Magistrate Judge Edward G. Bryant for a report and recommendation. On April 16, 2009, the magistrate judge recommended that the Plaintiffs' motion be granted and a permanent injunction be issued. (Docket Entry ("D.E.") No. 94, R&R.) The Defendant filed an objection to this report and recommendation, and the Plaintiffs

filed a limited exception. After considering the parties' positions, the Court ADOPTS the magistrate judge's report and recommendation.

PROCEDURAL BACKGROUND

The magistrate judge correctly noted that the procedural background was undisputed and summarized the facts leading to the Plaintiffs' motion as follows:

> During a May 30, 2008 telephone status conference in the instant matter (the "May Status Conference"), this Court, pursuant to the agreement of the parties, ordered the parties to participate in mediation. (See, D.E. 68). On that same date, the Court referred the matter to Magistrate Judge Diane Vescovo ("Magistrate Vescovo") for mediation. By notice dated June 3, 2008, Magistrate Vescovo set the mediation conference to be heard on July 15, 2008. (D.E. 69).
> On June 11, 2008, the Court entered an Order granting in part and denying in part Plaintiffs' Motion for Summary Judgment. (D.E. 70). Specifically, the Court granted summary judgment in Plaintiffs' favor as to their trademark infringement and unfair competition claims based on the "SEVENTH-DAY ADVENTIST" mark. However, the Court found there were factual issues remaining and therefore denied summary judgment as to Plaintiffs' trademark infringement and unfair competition claims premised on their "ADVENTIST" and "SDA" marks, as well as on Plaintiffs' remaining claims of cyberpiracy under 15 U.S.C. § 1125(d), and dilution claims brought under both 15 U.S.C. § 1125(c) and T.C.A. § 47-25-513.
> Shortly before July 15, 2008, Defendant, through then current counsel Ronald Michael, Esq.[1] indicated he would not participate in the mediation conference, and on July 24, 2008, Defendant filed a Motion to Amend the Pretrial Order to delete the requirement of a mediation conference. (D.E. 71).
> On July 25, 2008, through the Second Mediation Order, the Court denied Defendant's Motion to Amend the Pretrial Order, and directed the parties to confer with Magistrate Vescovo to reset the settlement conference for a time prior to the trial date, then set for October 6, 2008. In the Second Mediation Order, the Court warned the parties that failure to participate in the mediation conference in good faith could result in sanctions against the offending party, including dismissal of the lawsuit or entry of default judgment. (See Second Mediation Order, D.E. 74) ("Failure of any party to personally and in good faith participate in this mediation conference as the Court has directed may result in sanctions, including either dismissal of the lawsuit or default judgment against the offending party being

---

[1] Ronald Michael, Esq. has since withdrawn as attorney of record for Defendant.

entered").

Pursuant to the Second Mediation Order, the parties conferred with Magistrate Vescovo's office and obtained several possible dates for mediation, and informed Magistrate Vescovo's office they would call back within the next few days to confirm the date for mediation, as well as the intent of the respective parties to attend mediation. However, shortly thereafter, Defendant's remaining counsel, Charles Holliday, indicated that Defendant would not attend, nor authorize counsel's participation on his behalf, in the mediation conference. In light of Defendant's stated intent not to attend the mediation, the parties informed Judge Vescovo's office by voice mail that they could not confirm a mediation date. Counsel for Defendant further advised counsel for Plaintiffs that he did not believe Defendant would appear for any trial conducted in this matter.[2] As a result, on August 15, 2008, Plaintiffs filed a motion to continue the trial and for a status conference. (D.E. 75).

Pursuant to the Plaintiffs' motion, on August 26, 2008, this Court held a status conference, during which this Court ordered the parties to contact Magistrate Vescovo's chambers regarding setting a date for mediation, and ordered the parties to certify with the Court, subsequent to the setting of the mediation conference, that their respective clients will be available and present for the mediation conference. (D.E. 80). Pursuant to the order given at the August 26, 2008 status conference (the "Third Mediation Order"), the parties contacted Magistrate Vescovo's office and agreed upon a date of October 2, 2008 for the mediation conference (the "October Mediation Conference").

In accordance with the Third Mediation Order, on September 4, 2008, Plaintiffs' counsel filed a Certification of Counsel, therein confirming Plaintiffs' intent to appear at and participate in good faith in the October Mediation Conference. (D.E. 83). On that same date, Defendant's counsel filed a Certification of Counsel, therein confirming that Defendant would not appear at or participate in the October Mediation Conference. (D.E. 82).

In response to Defendant's Certificate of Counsel, on September 29, 2008 Magistrate Vescovo held a telephone status conference, during which Defendant's counsel confirmed that Defendant would not attend the October Mediation Conference. Accordingly, Magistrate Vescovo cancelled the October Mediation Conference. (D.E. 84).

(D.E. 94, R&R, at 1-4 (footnotes in original).) Considering that neither of the parties' briefs raise objections to the magistrate judge's factual summary, this Court adopts this portion of the report.

---

[2]Subsequent to the filing of his Answer, and while this litigation was ongoing, Defendant left the United States, and is currently, Plantiffs believe, located somewhere in Africa. Defendant has refused to return to the United States for the mediation or trial, refuses to allow his Counsel to disclose to Plaintiffs or the Court his precise location in Africa, and refuses to give any indication as to when or if he will return to the United States from Africa.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b) permits a magistrate judge to make a recommendation regarding a "pretrial matter dispositive of a claim or defense." The parties may file an objection ten days after being served with a copy of the magistrate judge's report and recommendation. Fed. R. Civ. P. 72(b)(2). Upon receiving a proper objection, the district court reviews the magistrate judge's recommendation de novo, and it "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

ANALYSIS

The magistrate judge considered the issue of whether default judgment would be an appropriate sanction for the Defendant's refusal to attend the settlement conference. Rule 16(a)(5) permits the district courts to issue orders regarding pretrial conferences for the purpose of facilitating settlement, and Rule 16(f) provides that sanctions may be imposed against a party who fails to appear at a pretrial conference or fails to obey a pretrial order.[3] As explained by a cross-reference to Rule 37, the available sanctions under Rule 16(f) include "rendering a default judgment against

---

[3]Even though Rule 55 is entitled "default; default judgment," the motion at issue in the magistrate judge's report and recommendation does not involve Rule 55, which addresses default when one party fails to "plead or otherwise defend." As Wright, Miller, & Kane note:
> Rule 55(a) does not represent the only source of authority in the rules for the entry of a default that may lead to judgment. As a result, a party who has filed a responsive pleading or otherwise defended still may be found in default for noncompliance with the rules at some later point in the action. For example Rule 37(b)(2)(C) and Rule 37(d) both provide for the use of a default judgment as a sanction for violation of the discovery rules.

10A Wright, Miller, & Kane, Federal Practice and Procedure: Civil 3d § 2683, at 19 (3d ed. 1998). In this case, the Defendant has not failed to "plead or otherwise defend." Rather, he failed to comply with a pretrial order to attend a settlement conference, for which sanctions may be imposed under Rule 16(f), including default.

the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(vi). In addition to the Federal Rules of Civil Procedure, the Court has the "inherent power to 'protect[] the due and orderly administration of justice and . . . maintain[] the authority and dignity of the court . . . .'" Bowles v. City of Cleveland, 129 Fed. App'x 239, 241 (6th Cir. 2005) (quoting Cooke v. United States, 267 U.S. 517, 539, 69 L. Ed. 767, 45 S. Ct. 390 (1925)) (alterations in original).

In determining whether default judgment was an appropriate sanction for the Defendant's refusal to appear at the mediation conferences, the magistrate judge considered the four factors listed in Regional Refuse Systems, Inc. v. Inland Reclamation Co., 842 F.2d 150, 155 (6th Cir. 1988) (superceded on other grounds). These factors include: "(1) whether the party's failure to comply with the order is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to abide by court orders; (3) whether the party subject to the default was warned that failure to cooperate could lead to default; and (4) whether less dramatic sanctions were imposed or considered before default was ordered." ((D.E. 94, R&R, at 5.) Applying this legal standard to the circumstances of this case, the magistrate judge determined that the Defendant's failure to appear was willful, that the Plaintiffs were prejudiced because of the time and money wasted as a result of the delay, that the Court warned the Defendant about the consequences of failing to comply with its orders on several occasions, and that lesser sanctions would be ineffective. (Id. at 5-6.) Thus, the magistrate judge concluded that awarding the Plaintiff a default judgment was the appropriate sanction for the Defendant's conduct. The Defendant raises no specific objections to the legal standard utilized by the magistrate judge, but he makes essentially three objections to the way the law was applied in his case.

    I.        Defendant's Objections

First, the Defendant objects to the magistrate judge's finding of "willfulness." He claims that his religious beliefs prevented him from participating in mediation because he is theologically opposed to compromising his position in this dispute. But see Nick v. Morgan's Foods, Inc., 99 F. Supp. 2d 1056, 1061 (E.D. Mo. 2000) ("Good faith participation in ADR does not require settlement. In fact, an ADR conference conducted in good faith can be helpful even if settlement is not reached.") The Court finds the Defendant's position to be wholly inconsistent with his earlier actions in the litigation. During a telephone status conference on May 30, 2008, both parties agreed to mediation. (D.E. 66, 71.) Because of this mutual desire to mediate, the Court referred this case to Magistrate Judge Vescovo for the purpose of conducting a settlement conference. (D.E. 67.) The settlement conference was not unilaterally imposed on the Defendant, and his agreement to participate was voluntary.[4] (See D.E. 74, Order Denying Mot. to Amend, at 2 (noting that "both Plaintiffs' and Defendant's counsel, in good faith, agreed to this mediation")). The Defendant's contradicting stances call into question the sincerity of his new-found convictions about the evils of settlement negotiations concerning this trademark dispute. In any regard, invoking religion does not give the Defendant free license to agree to participate in mediation and then, less than two months later, willfully disobey a court order by refusing to attend the conference or send a representative on his behalf. See Nick, 99 F. Supp. 2d at 1061 (observing that "[w]hen a party agrees to participate in a mediation process in good faith, the Court is entitled to rely on that

---

[4]On July 24, 2008, the Defendant filed a motion requesting that this Court remove the requirement for mediation from the Pre-Trial Order because he was planning be outside the country and because "his religious convictions will not allow him to compromise his faith." (D.E. 71, Mot. To Amend., at 2.) The Court denied this motion, and the Defendant thereafter refused to appear at any court-ordered settlement conference. (D.E. 74, Order Denying Mot. To Amend.)

6

representation," and "[i]mplicit in the concept of good faith participation is the assurance that the parties will participate in ADR in accordance with the Court's order").

Second, the Defendant objects to the magistrate judge's statement that "[h]e has further indicated through counsel that he will not participate should this matter go to trial." ((D.E. 94, R&R, at 6.) Magistrate Judge Bryant's statement was based on the fact that "Counsel for Defendant further advised counsel for Plaintiffs that he did not believe Defendant would appear for any trial conducted in this matter." (Id. at 3.) McGill contends that this is incorrect and he actually did plan to participate in the trial, as evidenced by his motion on July 24, 2008 in which he requested that this Court remove the requirement of mediation and allow the case to proceed to trial. (D.E. 71.) However, the Defendant does not refute the fact that his lawyer communicated a disbelief regarding his willingness to return and participate in trial, and that is precisely what the magistrate judge noted in the report and recommendation.[5] The statement to which McGill objects is in accord with the factual summary of the procedural background, which the Defendant previously admitted was substantially correct. (D.E. 89, Def.'s Response, at 1.) Thus, this Court does not find the disputed comment to be inaccurate or objectionable.

Finally, the Defendant essentially argues that, if this Court had ruled in his favor on previous occasions, then mediation would have been unnecessary. This is true, of course, but irrelevant to the question of whether sanctions should be imposed because the Defendant willfully refused to

---

[5]Magistrate Judge Bryant never stated that the Defendant explicitly expressed an absolute unwillingness to appear at trial, though the circumstances suggested the his cooperation would be unlikely. In addition to his previous failures to comply with this Court's orders and his own lawyer's belief that he would not appear, he was believed to be somewhere in Africa as this litigation was ongoing, refused to disclose his precise location, and refused to indicate when he would return. ((D.E. 94, R&R, at 3 n.2.) In light of these circumstances, an inference that the Defendant would not return for trial is reasonable.

follow this Court's orders. See, e.g., Olcott v. Del. Flood Co., 76 F.3d 1538, 1555-56 (10th Cir. 1996) (noting that "sanctions imposed pursuant to Rule 16(f) were, at least in part, designed to punish noncompliance with pretrial orders"); Resolution Trust Corp. v. Williams, 165 F.R.D. 639, 646 (D. Kan. 1996) (stating that "[t]he predominate purpose of both [Rule 16(f) and Rule 37(b)] is to punish litigants and attorneys for their noncompliance with discovery and pretrial orders"). Irrespective of whether this Court misinterpreted or misapplied the law in previous dispositive motions, all parties are required to follow the scheduling order while the matter is under the jurisdiction of this Court. Cf. Walker v. Birmingham, 388 U.S. 307, 314, 87 S. Ct. 1824, 18 L. Ed. 2d 1210 (1967) (quoting Howat v. Kansas, 258 U.S. 181, 190, 42 S. Ct. 277, 66 L. Ed. 550 (1922)) (observing that, after a court has made a ruling, "until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished"). If a party disagrees with a particular ruling, then he may file a motion for reconsideration, apply for interlocutory review, or appeal as a matter of right after a final decision has been reached. Simply disregarding an unfavorable ruling or order, however, may expose a party to sanctions.

Upon a de novo review of the magistrate judge's recommendation, this Court finds the objections raised by the Defendant to be unavailing. In fact, one panel of the Sixth Circuit recently upheld a trial court's imposition of dismissal as a sanction under similar factual circumstances. See Rogers v. City of Warren, 302 Fed. App'x 371 (6th Cir. 2008) (upholding dismissal where the plaintiff failed to appear at two court-ordered settlement conferences). Because this Court agrees with the reasoning in the report of the magistrate judge, it hereby adopts the recommendation that default judgment should be entered against the Defendant as a sanction.

## II.     The Plaintiffs' Limited Exception

The Plaintiffs fully agree with the magistrate's ruling as to the appropriate sanction, but requests that their alternative argument supporting injunctive relief, which was raised in their motion, be addressed by this Court.  The Plaintiffs argue that, regardless of the issue of sanctions, the Defendant should be permanently enjoined from using the words "Seventh-day," "Adventist," and "SDA" because of this Court's previous award of summary judgment regarding the mark "Seventh-day Adventist."  (D.E. 70, Order on Mot. For S.J., at 28.)  This Court now considers whether this would provide adequate grounds for adopting the language of the Plaintiffs' proposed injunction.

In a previous order, this Court found that the Defendant had infringed the Plaintiffs' "Seventh-day Adventist" mark, but there remained questions of fact with regard to the "Adventist" and "SDA" marks.  (Id. at 9-17.)  The Plaintiffs' "Seventh-day Adventist" and "Adventist" marks had incontestable status under 15 U.S.C. § 1065, but the Defendant raised the defense that they had become generic.  (Id. at 8-9.)  The Court found that "the evidence presented by the Defendant is not sufficient to overcome the presumption that the Plaintiffs' 'Seventh-day Adventist' mark is not generic" and held that the Plaintiffs were entitled to summary judgment on this claim.  (Id. at 11.) With regard to the "Adventist" mark, however, the Court found a triable issue of fact after considering evidence–from the dictionary and Wikipedia–that indicated that this term could refer to a broader religious doctrine.  (Id. at 15.)  The Court also declined to award summary judgment with regard to the term "SDA" because it was not registered and the Plaintiffs presented no evidence to establish secondary meaning.  (Id. at 16-17.)

The Plaintiffs now argue that, as a remedy for the Defendant's infringement of their

"Seventh-day Adventist" mark, this Court should apply the "safe distance rule" and issue a permanent injunction that also prohibits the Defendant from using the terms "Seventh Day," "Adventist," and "SDA." To support this argument, they cite to Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353 (6th Cir. 1930). In that case, the plaintiff used the trademark "Autowline" to describe a special rope used to tow automobiles, and the defendant used "Au-Tow-Line" to describe a similar product. Id. at 353. After the court enjoined the defendant from using either of those names, the defendant's general manager began selling products under the name of "Auto-Tow-Line" to circumvent the literal prohibitions of the injunction. Id. In a contempt proceeding, the defendant argued that the new phrase was merely descriptive and not entitled to trademark protection, but, upon appeal, the Sixth Circuit determined that the safe-distance rule prevented the defendant from using "Auto-Tow-Line" even if others could. Id. at 353-54. It found that the defendant "was disqualified to claim the full competitive rights which might be open to a stranger." Id. at 354. Its reasoning was that a defendant who had been found to have infringed a trademark "should thereafter be required to keep a safe distance away from the margin line–even if that requirement involves a handicap as compared with those who have not disqualified themselves." Id. In other words, the injunction against the defendant had the effect of barring his "use of any word in such close imitation or resemblance [to the prohibited trademark] as to mislead the public." Id. The goal was to prevent the defendant from preserving "good will acquired through fraud." Id.

While the issue in Broderick & Bascom Rope concerned the interpretation of an injunction at a contempt proceeding, other cases have considered the safe-distance rule when determining the appropriate scope of the language in drafting an injunction. Vining Indus. v. M.B. Walton, Inc., 106 F. Supp. 2d 966, 973 (S.D. Ohio 1997) (citing Chevron Chemical Co. v. Voluntary Purchasing

10

Groups, 659 F.2d 695, 705-06 (5th Cir. 1981); Imagineering, Inc. v. Van Klassens, Inc., 851 F. Supp. 532 (S.D.N.Y. 1994); Kimberly Knitwear, Inc. v. Kimberley Stores of Mich., 331 F. Supp. 1339, 1341-42 (W.D.Mich. 1971)).  In this context, however, district courts have equitable discretion in drafting an injunction, which could involve whether to  include explicit prohibitions about additional marks aside from the one found to have been infringed.  Id. (citing Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145 (7th Cir. 1994)); see also eBay Inc., et al. v. MercExchange, LLC, 547 U.S. 388, 391, 126 S. Ct. 1837 164 L. Ed. 2d 641 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion"); Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006) ("The scope of injunctive relief is reviewed for abuse of discretion.").

In this case, the Plaintiffs assert that the injunction should be sufficiently broad to remedy past actions and protect against future conduct.  Upon considering the appropriate remedial action, however, this Court would be reluctant to broadly enjoin the Defendant's use of "Seventh-day," "Adventist," and "SDA" solely to remedy infringement of the term "Seventh-day Adventist."  The Court has held that there are issues of fact with regard to whether the term "Adventist" is generic, which is the weakest category of mark.[6]  Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1117 (6th Cir. 1996).  As such, it would be more appropriate to defer the Court's ruling concerning the term "Adventist" until the strength of the mark could be ascertained.  As for the term "Seventh-day," the Plaintiffs have not presented evidence that would establish secondary

---

[6]The mark at issue in Broderick & Bascom Rope was considered descriptive by the trial court.  41 F.2d at 353.  The Plaintiffs have not cited a case applying the safe-distance rule to a generic term.

meaning.[7] Given the limited information currently in the record, the Court would be unwilling to enjoin all uses of the term "Seventh-day," regardless of the context. Likewise, as this Court noted in its previous order, "SDA" is not a registered mark and the Plaintiffs have presented no proof as to how the public perceives this mark. Thus, when issuing an injunction strictly as a remedy for infringement of the "Seventh-day Adventists" mark, the Court, in exercising its discretion, would not explicitly prohibit all uses of the terms "Adventists," "Seventh-day," or "SDA" without affording the Defendant an opportunity to present proof regarding the remaining claims on the merits.[8]

Of course, application of the safe-distance rule is but one alleged ground upon which the Plaintiffs request injunctive relief. As noted in the magistrate judge's report and recommendation, default judgement as a sanction provides an alternative and independent ground upon which this Court may grant the Plaintiffs' request for a permanent injunction. Because the Court agrees with Magistrate Judge Bryant that the Plaintiffs' proposed language is narrowly tailored to permit default judgment on the remaining claims, it adopts this recommendation.[9]

---

[7]Additionally, "Seventh-day" was not mentioned in the Plaintiffs' complaint as one of the marks that had been infringed. (See D.E. 1, Complaint.)

[8]Although, even if these terms were not explicitly prohibited in the injunction, the Defendant may still be held in contempt for using them in a manner that clearly undermines the purpose of an injunction. See Broderick & Bascom Rope, 41 F.2d at 354.

[9]The language of the injunction will be as follows:
   Defendant and his agents, servants and employees, and all those persons in active concert or participation with them, are forever enjoined from using the mark SEVENTH-DAY ADVENTIST, including the use of the words SEVENTH-DAY or ADVENTIST, or the acronym SDA, either together, apart, or as part of, or in combination with any other words, phrases, acronyms or designs, or any mark similar thereto or likely to cause confusion therewith, in the sale, offering for sale, distribution, promotion, provision or advertising of any products and services, and including on the Internet, in any domain name, key words, metatags, links, and any

12

CONCLUSION

For the reasons articulated herein and upon de novo review, the Court **ADOPTS** the magistrate judge's report and recommendation. As a sanction for the Defendant's willful failure to comply with the scheduling order, default judgment will be awarded to the Plaintiffs on their remaining claims. This Court hereby enjoins the Defendant in accordance with the language approved by the magistrate judge.

IT IS SO ORDERED this 27th day of May, 2009.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

other use for the purpose of directing Internet traffic, at any locality in the United States. Subject to the foregoing, Defendant may use these terms in a non-trademark sense, such as oral or written use of the marks to refer to the Plaintiffs, or oral or written use of certain terms in a non-trademark descriptive sense, such as "this Church honors the Sabbath on the 'seventh day,'" or "the members of this church believe in the 'advent' of Christ."

As it pertains to all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing the SEVENTH-DAY ADVENTIST mark, or bearing the words SEVENTH-DAY or ADVENTIST, or the acronym SDA, either together, apart, or as part of, or in combination with any other words, phrases, acronyms or designs, or any mark similar thereto or likely to cause confusion therewith, and all plates, molds, matrices, and other means of making the same (collectively, "Defendant's Infringing Articles"), Defendant shall either: (1) deliver Defendant's Infringing Articles to Plaintiffs' attorney within twenty (20) days after issuance of the Order, to be impounded or permanently disposed of by Plaintiffs; or (2) permanently dispose of Defendant's Infringing Articles himself within twenty (20) days of this Order, and also within twenty (20) days of this Order certify in writing and under oath that he has personally complied with this Order.

Regardless of the manner of disposal of Defendant's Infringing Articles, Defendant shall file with the Clerk of this Court and serve on Plaintiffs, within twenty (20) days after issuance of this Order, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the foregoing injunction.