## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| GENERAL CONFERENCE CORPORATION ) <br> OF SEVENTH-DAY ADVENTISTS and ) <br> GENERAL CONFERENCE OF ) <br> SEVENTH-DAY ) <br> ADVENTISTS, an Unincorporated Association,) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WALTER McGILL, d/b/a CREATION ) <br> SEVENTH DAY ADVENTIST CHURCH, ) <br> *et al.*, ) <br> ) <br>     Defendants. ) | Case No. 1:06-cv-01207 |

_____

**REPORT AND RECOMMENDATION ON MOTION TO SHOW CAUSE, AND MOTION FOR SANCTIONS, AND ORDER HOLDING IN ABEYANCE MOTION TO WITHDRAW AS COUNSEL**
_____

Before the Court are the Plaintiffs' Motion and Memorandum for Order Setting Evidentiary Show Cause Hearing [D.E.116] and Motion and Memorandum for Sanctions and Order Setting Show Cause Hearing [D.E.117]. Also before the Court is Defense Attorney's Motion to Withdraw as Counsel for Defendant and Memorandum in Support [D.E.119]. Plaintiffs' two motions were referred to the Magistrate Judge for determination and/or Report and Recommendation [D.E. No. 118] and Defense Attorney's motion was referred for determination [D.E.120].

Considering the motions and accompanying memoranda, as well as the testimony of witnesses and counsels' arguments at the hearing conducted by this Court on May 25,

2010, and considering the entire record in this matter, the Magistrate Judge recommends that Plaintiffs' Motions be granted and determines that Defendant's motion be held in abeyance pending consultation between counsel.

## PROCEDURAL BACKGROUND

The procedural background is extensive and will not be repeated here. This Court does rely on the injunction ("INJUNCTION") issued by Judge Breen in his Order of May 28, 2009 as follows:

> "Defendant and his agents, servants and employees, and all those persons in active concert or participation with them, are forever enjoined from using the mark SEVENTH-DAY ADVENTIST, including the use of the words SEVENTH-DAY ADVENTIST, or the acronym SDA, either together, apart or as part of, or as a part of, or in combination with any other words, phrases, acronyms or designs, or any mark similar thereto or likely to cause confusion therewith, in the sale, offering for sale, distribution, promotion, provision or advertising of any products and services, and including on the Internet, in any domain name, key words, metatags, links, and any other use for the purpose of directing Internet traffic, at any locality in the United States. Subject to the foregoing, Defendant may use these terms in a non-trademark sense, such as oral or written use of the marks to refer to the Plaintiffs, or oral or written use of certain terms in a non-trademark descriptive sense such as "this Church honors the Sabbath on the 'seventh day'" or "the members of this church believe in the 'advent' of Christ."
>
> As it pertains to all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing the SEVENTH-DAY ADVENTIST mark, or bearing the words SEVENTH-DAY or ADVENTIST or the acronym SDA, either together, apart or as part of , or in combination with any other words, phrases, acronyms or designs, or any mark similar thereto or likely to cause confusion therewith, and all plates, molds, matrices, and other means of making the same (collectively, "Defendant's Infringing Articles"), Defendant shall either: (1) deliver Defendant's Infringing Articles to Plaintiffs' attorney within twenty (20) days after issuance of the Order, to be impounded or permanently disposed of by Plaintiffs; or (2) permanently dispose of Defendant's Infringing Articles himself with twenty (20) days of this Order, and also with twenty (20) days of this Order certify in writing and under oath that he has personally complied with this Order.
>
> Regardless of the manner of disposal of Defendant's Infringing Articles, Defendant shall file with the Clerk of this Court and serve on Plaintiffs, within twenty (20) days after issuance of this Order, a report in writing, under oath,

setting forth in detail the manner and form in which Defendant has complied with the foregoing injunction."

The Report and Recommendation on Motions of December 14, 2009 contains a summary of the procedural history of this matter for the period of time leading up to and including the filing of Judge Breen's Order Adopting Report and Recommendation ("ORDER") [D.E.112] of January 6, 2010. Thus, it need not be repeated here.

## FACTS AND LAW

This Order, *inter alia*, required Defendant McGill to cooperate with Plaintiffs in limited discovery for the purpose of ascertaining the identities of others in association or concert with Defendant to violate the Injunction. Since the time that requirement was imposed on Mr. McGill, he, through his attorney, has refused to set any date to conduct a deposition, and Plaintiffs' written discovery served on February 4, 2010 has not been answered. By all accounts, Defendant McGill is in Africa doing mission work and emailing associates and his attorney at will. Nevertheless, he continues to ignore both the Injunction and Order of the District Court and appears to be in concert with other individuals who assist in carrying out his actions in violation of the Injunction and Order. Based on the facts before this Court, the recommendation is that Plaintiff McGill should be found in contempt for willful disobedience of the Court's Order. Rule 37(b)(2) of the Federal Rules of Civil Procedure permits the Court to sanction a party and treat as contempt of court a party's failure to obey a court's discovery order.

Later and at the request of Plaintiff, the Court set an evidentiary show cause hearing on May 25, 2010. Plaintiff issued four (4) subpoenas to people that Plaintiff

believed were the Defendant's "agents, servants, employees, and those persons in active concert or participation with Defendant who have assisted in violating the Permanent Injunction." One such person, Ms. Chrystal Martin, had been previously released by Plaintiff from her subpoena and did not appear. The other three witnesses were present in court. Mr. Keith Ellsworth Johnson and his wife Dorothy Johnson each testified that at one time they were associated with Defendant church, but were no longer active and specifically, claimed no responsibility for restoring church signage which had been removed by the Order. It should be noted that at the conclusion of this hearing, Plaintiff released Ms. Martin and the Jacksons from this cause of action.

The fourth witness was Mr. Lucan Chartier, the acting pastor of Defendant McGill's church. He testified at length concerning his beliefs and current efforts on behalf of Defendant McGill and the church. Included was his <u>admission</u> that he re-painted and replaced the signs at the church location in Guys, Tennessee, and that he did so following consultation with Mr. McGill. He is routinely in contact with Mr. McGill via the internet and lives rent-free in an apartment upstairs in the church location, which is owned by Mr. McGill and/or his wife Barbara Isenburg. This church building was formerly a gasoline station and is located on Highway 45 near the Mississippi state line in Guys, Tennessee. Mr. Chartier, a young man in his early twenties, was home-schooled and has earned his GED. For his age, he appears to be well informed on his church dogma and firm in his beliefs. So much so that he testified that, while having great regret, he would continue his "civil disobedience" if necessary to keep the church signage in place, would continue maintaining his website(s) and postings on other sites, and would

4

not fully answer questions about others who were involved in activities in possible violation of the Injunction and Order. While this young man seems sincere, it may well be that he is simply inexperienced by age or misguided by Defendant McGill or both. Neither Mr. McGill nor his agent Mr. Chartier want to accept that they cannot arbitrarily seize a property right—the trademark rights to Plaintiffs' name—and continue to use it intentionally or unintentionally to create confusion to the detriment of others, including this Plaintiff. The long-standing trademark laws of this country rightfully protect against what they are doing.

According to Mr. Chartier, both Plaintiff and Defendant churches share the same beginning by their founder Ellen White in the nineteenth century, and from that origin, she received the name "Seventh-Day Adventists" from God. This Court recognizes that, at some point along the way, Plaintiff applied for and received trademark protection for the name "Seventh-Day Adventist." In more recent history, Defendant McGill left the Plaintiff church and started the Defendant church. As an aside, this Courts notes that congregants have left churches of all denominations ever since churches have existed. But when members leave, they cannot assume the trademark name of the church and take it with them. But this is exactly what Defendant McGill is attempting. It now appears that Mr. Chartier attempts to remake this trademark issue into a much larger cause of free exercise of religion—in effect that Defendant is being denied the right to worship by the government. However, this surely rings hollow since no one, including this Court or the Plaintiff, is preventing the followers of Defendant McGill and his church from the full practice of their religious beliefs. Nothing stands in the way of Defendant's worship,

except understanding, like <u>anyone else</u> who might leave one church to begin a new church, he or she must have a different and distinctive name for their new church.

If Defendant's reason for leaving is as Mr. Chartier testified—that Plaintiff church has strayed in belief—then the reality is that Defendant's proper remedy would have been to seek resolution of any such theological differences within the Seventh-Day Adventist Church hierarchy. And this would not have involved the civil courts. But when Mr. McGill simply leaves and attempts to carry with him a trademark-protected name, then the civil courts can be used, not to resolve a church dispute over "beliefs," but to settle recognized federal laws such as trademarks.

These observations aside, the Court's Order clearly permitted Plaintiff to remove and permanently dispose of Defendant's signs and promotional materials which violated the Injunction. Plaintiffs' agents acted on this Order and removed the church signs and other infringing materials at the Guys, Tennessee location on February 16, 2010. Mr. Chartier readily accepts responsibility for restoring the signs to the Defendant church property, which was a willful act in violation of the Court Order. Mr. Chartier testified he acted alone, although according to the Plaintiff, he had used plural word "we" in publicizing the incident to the media. However, it is clear to this Court that Mr. Chartier's actions were as a result of his communications with Defendant McGill. Here, the Court concludes that Mr. McGill was directly instrumental in these violations by Mr. Cartier by wrongfully influencing, encouraging and allowing him to commit these acts, which Mr. McGill knew would be in violation of the Court's Order. As such Defendant McGill should be found in contempt of this Order.

As to Mr. Chartier, he failed to comply with a subpoena to appear at a deposition scheduled for March 18, 2010 in Jackson, Tennessee. This subpoena [D.E.115] reflects Mr. Chartier's address then as Rienzi, Mississippi, and the Court takes judicial notice that the distance between these two cities is less than 100 miles. The Court finds Mr. Chartier's failure to obey the subpoena and attend the deposition to be willful contempt on his part. *See* Fed. R. Civ. P. 45 (e).

During his testimony at the hearing, Mr. Chartier also said he would continue use of internet sites. The evidence before this Court is that he hosted and maintained at least one website (loudcry.eu) which contains content in violation of the Injunction. He also testified that "every few months" he contributed to the Wikipedia website pertaining to Defendant church. Evidence introduced by the Plaintiff of that Wikipedia site more closely linked Mr. Chartier, through both his name and user name "Qinael" to the site and his active role in updating the for Defendant church. Included in this Wikipedia site is Mr. Chartier's personal profile, his version of the history of the Defendant church and a revision "Qinael" made as recently as March 18, 2010 where he discusses the March 8, 2010 repainting of church signs violation of the ORDER. Mr. Chartier testified he was "Qinael" and responsible for all the postings. He also stated he had posted on several other websites over the "last couple of days." By his own words, these actions willfully violated both the District Court's Injunction and Order, and it is recommended that he be found in contempt of Court and sanctioned. A decision on a motion for contempt lies within the sound discretion of the court. *See Electrical Workers of Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv.*, 340 F.3d 373, 378 (6th Cir. 2003). A nonparty

7

may be held in contempt. *See e.g., U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 469 (6th Cir. 2006).

## CONCLUSION

In summary, this Court recommends that Defendant Walter McGill be found guilty of willful contempt for failing to make himself available for his deposition and to answer written discovery. Also, he should be found in contempt for working in concert with Mr. Chartier, and for his continued direction and encouragement of Mr. Chartier to take certain actions which violated the Court's Injunction and Order.

It is recommended that Lucan Chartier be found in willful contempt because of his refusal to obey a lawful subpoena to be deposed and because of his willful disobedience of the Court's Order by acting in concert with Defendant McGill in restoring and replacing the signs at the former church location in Guys, Tennessee. This Court also recommends that Mr. Chartier be declared in contempt because he continues working in concert with Defendant McGill in maintaining at least one website (loudcry.eu) and in posting on the Wikipedia internet site, all of which is prohibited by both the Court's Injunction and Order.

The Court recommends that both Mr. McGill and Mr. Chartier should be sanctioned appropriately.

As to the motion of Defendant's attorney to withdraw, Mr. Holliday wishes to be relieved as counsel in this case, but opposing counsel Mr. Galanter objects. Mr. Holliday appears to be the only avenue of communication that the Court and opposing counsel have with the Defendant McGill. There has been no substitution for Mr.

8

Holliday, and he is being paid by Defendant McGill. However, Mr. Galanter has offered to work on a compromise with Mr. Holliday. Therefore, the Court determines to hold this motion in abeyance pending continued efforts of the parties' attorneys to reach an agreement on this motion.

<u>s/Edward G. Bryant</u>
EDWARD G. BRYANT
U.S. MAGISTRATE JUDGE

<u>Date:</u> <u>June 24, 2010</u>

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**