IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GENERAL CONFERENCE CORPORATION
OF SEVENTH-DAY ADVENTISTS and
GENERAL CONFERENCE OF SEVENTH-DAY
ADVENTISTS an Unincorporated Association,

      Plaintiffs,

v.                                    No. 1:06-cv-01207-JDB-egb

WALTER MCGILL, d/b/a CREATION
SEVENTH DAY ADVENTIST CHURCH, et al.,

      Defendant.

RELATED CASE:

IN RE LUCAN CHARTIER             No. 1:11-mc-00003-JDB-egb

_____

ORDER ADOPTING IN PART AND MODIFYING IN PART
REPORT AND RECOMMENDATION (D.E. NO. 160)
_____

      Before the Court is the Magistrate Judge's Report and Recommendation on the notice of

additional violations of court orders and motion for order setting evidentiary show cause hearing

of Plaintiffs, General Conference Corporation of Seventh-Day Adventists and General

Conference of Seventh-Day Adventists, an unincorporated association (collectively "General

Conference of Seventh-Day Adventists" or "General Conference"). (Docket Entry ("D.E.") No.

160.) Defendant, Walter McGill, and third-party Lucan Chartier have both lodged objections

(D.E. No. 162, 162-1; D.E. No. 1.), to which Plaintiffs have responded. (D.E. No. 172; D.E. No.

6.) Chartier filed a reply to Plaintiffs' response. (D.E. No. 11.) For the reasons stated herein, the

Report and Recommendation is ADOPTED IN PART AND MODIFIED IN PART.

## I.   FACTUAL BACKGROUND

This case arises from a trademark infringement dispute between the General Conference of Seventh-Day Adventists and Walter McGill, the pastor of an unincorporated association known as the Creation Seventh Day Adventist Church. The Court has previously enjoined the Defendant's use of the mark "SEVENTH-DAY ADVENTIST, including the use of the words SEVENTH-DAY or ADVENTIST, or the acronym SDA."[1] (D.E. No. 98 at 12-13 n.9.) Defendant has also been held in contempt for violating the Court's injunction by promoting the use of domain names and websites, as well as signs and promotional materials that contain the infringing marks. (See D.E. Nos. 112, 175.) The General Conference filed a notice of additional violations of the Court's orders and moved for the Court to set an evidentiary show cause hearing

---

[1] In full, the Court's injunction stated as follows:

Defendant and his agents, servants and employees, and all those persons in active concert or participation with them, are forever enjoined from using the mark SEVENTH-DAY ADVENTIST, including the use of the words SEVENTH-DAY or ADVENTIST, or the acronym SDA, either together, apart, or as part of, or in combination with any other words, phrases, acronyms or designs, or any mark similar thereto or likely to cause confusion therewith, in the sale, offering for sale, distribution, promotion, provision or advertising of any products and services, and including on the Internet, in any domain name, key words, metatags, links, and any other use for the purpose of directing Internet traffic, at any locality in the United States. Subject to the foregoing, Defendant may use these terms in a non-trademark sense, such as oral or written use of the marks to refer to the Plaintiffs, or oral or written use of certain terms in a non-trademark descriptive sense, such as "this Church honors the Sabbath on the 'seventh day,'" or "the members of this church believe in the 'advent' of Christ."

As it pertains to all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing the SEVENTH-DAY ADVENTIST mark, or bearing the words SEVENTH-DAY or ADVENTIST, or the acronym SDA, either together, apart, or as part of, or in combination with any other words, phrases, acronyms or designs, or any mark similar thereto or likely to cause confusion therewith, and all plates, molds, matrices, and other means of making the same (collectively, "Defendant's Infringing Articles"), Defendant shall either: (1) deliver Defendant's Infringing Articles to Plaintiffs' attorney within twenty (20) days after issuance of the Order, to be impounded or permanently disposed of by Plaintiffs; or (2) permanently dispose of Defendant's Infringing Articles himself within twenty (20) days of this Order, and also within twenty (20) days of this Order certify in writing and under oath that he has personally complied with this Order.

Regardless of the manner of disposal of Defendant's Infringing Articles, Defendant shall file with the Clerk of this Court and serve on Plaintiffs, within twenty (20) days after issuance of this Order, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the foregoing injunction.

(D.E. No. 98 at 12-13 n. 9.)

and require Lucan Chartier, an associate of McGill, to appear. (D.E. No. 148.) Plaintiffs stated that their agents again removed signs and other infringing materials from the Defendant's church property in Guys, Tennessee. (Id. at 4.) They averred that Chartier was present on the property at the time they removed the infringing materials and that he stated his intention to repaint the church signage. (Id.) Plaintiffs further indicated that the signs were again discovered to have been repainted and replaced, and their information and belief led them to conclude that Chartier was responsible. (Id. at 4-5.)

The Court referred the Plaintiffs' notice and motion to the Magistrate Judge, who thereafter scheduled an evidentiary hearing. (D.E. Nos. 149, 152.) Chartier appeared to testify pursuant to a subpoena of the Plaintiffs. During his testimony, Chartier stated that he was present when the Plaintiffs' agents removed signs from the Defendant's church in Guys, Tennessee. (D.E. No. 170 at 10-11.) Chartier admitted that he replaced those signs over the course of the next week and that he was aware doing so was a violation of the Court's orders.  (Id. at 11-12, 13-14.)  He further testified that he would continue to put the signs back so long as Plaintiffs take them down. (Id. at 15.) When questioned as to the Defendant's involvement in his restoration of the church signage, Chartier stated that he informed McGill of his actions after carrying them out, but not before. (Id. at 12, 14.) He professed that McGill had not asked him to continue putting the church signs back up but that it was understood between the two that he would do so. (Id. at 15, 30.) Chartier further testified that he acted alone in repainting the signs. (Id. at 12.)

With regard to infringing material on the internet, Chartier admitted to continuing to edit or publish information about the Creation Seventh Day Adventist Church on multiple websites, most of which the Court had previously enjoined him from using. (Id. at 15-16.) He acknowledged that he intended to continue creating websites and publishing information on the

internet that violated that the Court's injunction and orders by referring to the Creation Seventh Day Adventist Church.  (Id. at 19.)

Following the hearing, Magistrate Judge Bryant issued a report and recommendation. (D.E. No. 160.) He found that Chartier had acknowledged responsibility for replacing the infringing church signs and publishing and editing information on the internet and had conceded that such actions violated the Court's permanent injunction and prior orders. (Id. at 2.) As to McGill's involvement, Magistrate Judge Bryant determined that "McGill and Chartier continue to operate in tandem to violate the District Court's Orders, and that their actions are intentional and in contempt of said Orders." (Id.) The Magistrate Judge stated that it was "clear that Defendant McGill is able to instruct and manipulate his young protégé to accomplish these contemptible acts." (Id.) He found McGill in contempt as the principal of his agent, Chartier's, actions and as a direct participant due to his apparent instruction and aid to Chartier. (Id. at 2-3.) For their willful contempt, Magistrate Judge Bryant recommended that the Court fine McGill and Chartier $500.00 each, that it direct McGill to reimburse Plaintiffs' attorney's fees associated with filing their motion and with appearing for the associated hearing, and that it sentence McGill and Chartier to thirty days in the custody of the United States Marshals Service. (Id. at 5.) The Magistrate Judge further recommended that twenty days of Chartier's sentence be suspended pending his good behavior.  (Id.)

Both McGill and Chartier lodged objections to the Report and Recommendation. (D.E. No. 162, 162-1; D.E. No. 1.) McGill contends that the Report was procedurally deficient, that the recommended sanctions are criminal in nature and thus violate Federal Rule of Criminal Procedure 42, and that the evidence upon which he was found to be in contempt was inadequate.[2]

---

[2] At the time Defendant objected to the report and recommendation, McGill had purportedly discharged his attorney, but the Court had not yet permitted counsel to withdraw from the representation. For that reason, McGill's

Chartier argues that sanctioning him for the instant actions would violate the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and that the sanctions are criminal in nature and thus procedurally impermissible.

## II.   ANALYSIS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure, the district judge is to make a de novo determination of the magistrate judge's recommendations to which objections have been made. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court has reviewed all of the objections of McGill and Chartier and will discuss each below.

### A.   Procedure of Report and Recommendation

First, McGill asserts that his conduct was not properly before the Magistrate Judge because he was not ordered to appear at the show cause hearing and was not given notice that he might be held in contempt. While those points may be accurate, the testimony heard by the Magistrate Judge led him to conclude that McGill played a role in the continued contemptible conduct and should be sanctioned accordingly. Additionally, although McGill was not personally present, his counsel appeared and actively participated in the hearing. Thus, the Court is not persuaded by Defendant's assertion that his conduct was not before the court.

---

attorney submitted objections to the report and recommendation on his client's behalf, as well as attached objections prepared by McGill on a pro se basis. Although the Court ordinarily would not review a pro se filing by a represented party, see United States v. Jimenez-Zalapa, No. 06-20369-B, 2007 WL 2815563 (W.D. Tenn. Sept. 25, 2007), the Court will do so here given the unsettled status of the representation at the time of the objection.

Several of McGill's objections challenge the Magistrate Judge's findings based on the evidence presented before him and the nature of the sanctions recommended. The Court has considered those objections and addressed them below. The remainder quarrel with many of the Magistrate Judge's statements concerning the motivation behind McGill and Chartier's disobedience, their failure to understand the importance of enforcing trademark law, and the potential consequences of allowing Defendant's conduct to go unchecked. Whatever disagreements McGill has on these points, they are not specific legal or factual objections that warrant rejecting the report and recommendation under 28 U.S.C. § 636(b)(1)(C).

McGill also contends that the report and recommendation was procedurally deficient because the magistrate judge failed to follow the contempt procedure set out in 28 U.S.C. § 636(e)(6)(B)(iii). That section states that when a person commits an act that constitutes civil contempt in a proceeding before a magistrate judge under 28 U.S.C. § 636(a) or (b),

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.  The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

§ 636(e)(6)(B)(iii). McGill maintains that the report and recommendation is procedurally deficient because the magistrate judge neither certified facts to the district court nor served him with an order to appear before this Court and show cause why he should not be held in contempt. Contrary to Defendant's argument, the procedure set out in § 636(e)(6) is only applicable when the contemptible act occurs in a proceeding before a magistrate judge. Mosaic Fin. Servs., LLC v. RotateBlack Inv. Fund I, LLC, No. 1:07-MC-65, 2011 WL 1670930, at *2-3 (W.D. Mich. May 3, 2011) (rejecting argument that magistrate judge must follow § 636(e)(6)(B) where defendant was in contempt of district court restraining order); United States v. Ivie, No. 05-2314MA V, 2005 WL 1759727, at *2 (W.D. Tenn. June 14, 2005) ("Contempts committed in 'a proceeding before a magistrate judge' include not only contempts committed in the magistrate judge's presence, but also contempts related to proceedings before the magistrate judge.").

28 U.S.C. § 636(b)(1)(B) empowers the district court to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . ." It was under this authority that the Court referred the Plaintiffs' notice of additional violations and

6

motion to set an evidentiary show cause hearing to the Magistrate Judge, and he issued a report and recommendation. Where, as here, the party is found to be in contempt of an order of the district court, it is proper for the magistrate judge to submit proposed findings of fact and recommendations for the district judge's consideration pursuant to § 636(b)(1)(B). See Mosaic Fin. Servs., 2011 WL 1670930, at *2-3; Scioto Constr., Inc. v. Morris, No. 4:99-CV-83, 2007 WL 1656222, at *1 (E.D. Tenn. June 7, 2007) (adopting magistrate judge's report and recommendation pursuant to § 636(b)(1) and holding defendant in contempt for violation of district court's post-judgment discovery order). Thus, the report and recommendation is procedurally proper, and this objection is OVERRULED.

B.  Adequacy of Proof

McGill next objects to the report and recommendation on the basis that the proof presented at the evidentiary hearing was insufficient to find him in contempt. In a civil contempt proceeding, the burden rests with the party seeking the contempt order to show by clear and convincing evidence that the respondent "'violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" NLRB v. Cincinnati Broze, Inc., 829 F.2d 585, 591 (6th Cir. 1987) (quoting SEC v. First Fin. Grp. of Tex., Inc., 659 F.2d 660, 669 (5th Cir. 1981)); see also Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996). Once it has done so, the burden shifts back to the respondent to "produce evidence showing a present inability to comply with the court's order." Rolex Watch U.S.A., 74 F.3d at 720.

As to the latest round of violations, the Magistrate Judge heard testimony from Chartier that he and McGill exchanged communications regarding the restoration of signage to the Defendant's church. Although Chartier testified that he had not been specifically directed by

McGill to take down the signage, he stated that it was understood by McGill that he would do so. Chartier further admitted that he was aware that repainting the church signs was a violation of the Court's orders. After hearing the proof, the Magistrate Judge concluded that McGill and Chartier "continue to operate in tandem to violate the District Court's Orders, and that their actions are intentional and in contempt of said Orders." (D.E. No. 160 at 2.) Given Chartier's testimony that he regularly communicated with the Defendant regarding the contemptible acts, as well as McGill's long history of disobeying this Court's injunction and orders (See D.E. Nos. 111, 112, 136, 175), the Court finds that the Magistrate Judge was correct in concluding that McGill should likewise be found in contempt and sanctioned. McGill's objection is OVERRULED.

C. Appropriateness of Proposed Sanctions

McGill and Chartier argue that the sanctions recommended by the Magistrate Judge are criminal, rather than civil, in nature and that imposing those sanctions would be improper because they have not been afforded the procedural protections of Fed. R. Crim. P. 42. As previously noted, the Magistrate Judge recommended a $500 fine, that McGill be ordered to reimburse the Plaintiffs for their attorney's fees, and that McGill and Chartier each be sentenced to a term of thirty days, with twenty days of Chartier's sentence suspended pending good behavior. The report and recommendation did not specify whether those sanctions were intended to be civil or criminal.

Throughout this proceeding, McGill and now Chartier have willfully violated the Court's orders and injunctions. They are unrepentant in doing so as evidenced by Chartier's testimony that he intended to continue in the prohibited conduct. "When a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court

order, but it also is seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828, 114 S. Ct. 2552, 2557, 129 L. Ed. 2d 642 (1994) (internal modifications and quotations omitted). Thus, if the punishment is designed to effectuate a court's orders, as here, it is civil contempt, which is remedial in nature. Id. at 827, 114 S. Ct. at 2557. "The paradigmatic coercive, civil contempt sanction, as set forth in [Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S. Ct. 492, 55 L. Ed. 797 (1911)], involves confining a contemnor indefinitely until he complies with an affirmative command . . . ." Bagwell, 512 U.S. at 828, 114 S. Ct. at 2557. "In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." Id. at 827, 114 S. Ct. at 2558 (internal citations and quotation marks omitted).

A district court has "'inherent authority to fashion the remedy for contumacious conduct,' and incarceration is among the authorized remedies." United States v. Conces, 507 F.3d 1028, 1043-44 (6th Cir. 2007) (quoting Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 557 (6th Cir. 2006)), cert. denied, 553 U.S. 1042, 128 S. Ct. 2449, 171 L. Ed. 2d 246 (2008). "[I]ncarceration is a severe sanction" for a party's noncompliance with court orders, one that "ordinarily should be employed only as a last resort." Id. at 1043. In Conces, the Sixth Circuit found that incarceration was warranted because "nothing short of [the defendant's] imprisonment would secure his compliance with the court's orders," given the fact that he repeatedly had refused to comply with such orders even in the face of escalating sanctions, which culminated in a threat of incarceration. Id. at 1044. Likewise, in this case, McGill and Chartier repeatedly have refused to comply with this Court's orders. They have ignored the express directives of this Court to comply with all prior contempt sanctions, such that the Court is convinced that nothing

short of their incarceration will result in the relief to which the Plaintiffs are entitled. Thus, the Court finds that the Magistrate Judge's recommended sanctions are warranted and the objections based on Fed. R. Crim. P. 42 are OVERRULED. However, the Magistrate Judge's recommendation is MODIFIED to clarify that the sanctions are civil in nature. In that regard, McGill and Chartier may avoid incarceration by filing with the Clerk of this Court and serving on Plaintiffs, within fifteen (15) days after issuance of this Order, a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the Court's orders and injunction. If McGill and Chartier have not done so within the permitted time, the Court will order the United States Marshals Service to execute a warrant for their arrest and to incarcerate them until such time as they have ceased all contemptible conduct, but not more than thirty (30) days. Further, twenty (20) days of Chartier's sentence shall be suspended pending his good behavior.

### D.  Religious Freedom Restoration Act

Next, Chartier objects to the Magistrate Judge's report and recommendation on the grounds that RFRA prohibits the Court from holding him in contempt and sanctioning him. RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" except where "application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b). "A person whose religious exercise has been burdened in violation of [RFRA] may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). Chartier argues that he has a sincerely

held religious belief that would be substantially burdened if the Court sanctioned him with incarceration for willfully infringing Plaintiffs' trademark rights.

Even if Chartier's actions are based on a sincerely held religious belief, he cannot defend those actions using RFRA because the statute is inapplicable in this case.  In Defendant McGill's prior appeal, the Sixth Circuit Court of Appeals held that RFRA may not be used as a claim or defense in lawsuits between private parties.  Gen. Conference Corp. of Seventh-Day Adventists v. McGill, 617 F.3d 402, 410-12 (6th Cir. 2010), cert. denied, __ U.S. __, 131 S. Ct. 2097, 179 L. Ed. 2d 891 (2011).  Rather, RFRA's statutory text limits its application to suits in which the government is a party.  Id.  Thus, the appeals court rejected McGill's argument that RFRA prohibits a court from enforcing Plaintiffs' trademarks under generally applicable trademark law. Likewise, RFRA does not prevent the Court from holding Chartier in contempt and sanctioning him in order to protect the trademark rights of a private party. Chartier's objection on the basis of RFRA is OVERRULED.

### III. CONCLUSION

Following a de novo review of the objected to portions of the Magistrate Judge's report, the report and recommendation is ADOPTED IN PART and MODIFIED IN PART to reflect that the sanctions imposed herein are civil. The Plaintiffs are AWARDED attorney's fees associated with filing the notice of additional violations of court orders and motion for setting evidentiary show cause hearing and for appearing in Court for the evidentiary hearing on that motion. Counsel for the Plaintiffs is DIRECTED to submit an affidavit detailing those fees within thirty (30) days from the entry of this order. McGill and Chartier are each FINED $500.00 to be payable to the Clerk of Court for the United States District Court for the Western District of Tennessee. Finally, McGill and Chartier are DIRECTED to file with the Clerk of this Court and

serve on Plaintiffs, within fifteen (15) days after issuance of this Order, a report in writing, under oath, setting forth in detail the manner and form in which they have complied with the Court's orders and injunction. If McGill and Chartier fail to timely submit this written report, under oath, the Court will direct the United States Marshals Service to issue a warrant for their arrest.

IT IS SO ORDERED this 5th day of April, 2012.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE