IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GENERAL CONFERENCE CORPORATION
OF SEVENTH-DAY ADVENTISTS, *et al.*,

      Plaintiffs,

v.                                                                                  Nos.    1:06-cv-01207-JDB-egb
                                                                                                    1:15-mc-00009
WALTER MCGILL d/b/a CREATION
SEVENTH DAY ADVENTIST CHURCH, *et al.*,

      Defendants.

PLAINTIFFS' REPLY TO THE OBJECTION FILED BY DR. DAVID AGUILAR IN
FURTHER SUPPORT OF PLAINTIFF'S MOTION TO ADD FURTHER SPECIFICS TO THE
COURT'S PERMANENT INJUNCTION ENTERED MAY 28, 2009, AS FURTHER
DEFINED BY ORDER ENTERED JANUARY 6, 2010

      COME NOW Plaintiffs, General Conference Corporation of Seventh-day Adventists and General Conference of Seventh-day Adventists, and respectfully submit this Reply memorandum to Dr. David Aguilar's Objection to Motion to Add Further Specifics to the Court's Permanent Injunction Entered May 28, 2009, as Further Defined by Order Entered January 6, 2010 [D.E. 197] ( "Aguilar Objection").[1]

**INTRODUCTION**

      In his Objection, Dr. Aguilar fundamentally argues that this Court does not have the power to enforce this Court's Permanent Injunction entered on May 28, 2009, as further defined by Order entered January 6, 2010 ("Permanent Injunction"), as it relates to his activities in violation thereof. Dr. Aguilar bases his argument on the assertion that "neither [he] nor the

---

[1] The Aguilar Objection appears to have been ghost written by a lawyer, presumably one not admitted to practice before this Court, or otherwise counsel would have signed off on the filing.

websites [www.adventistry.to and www.faithofjesus.to] are operating, residing, or conducting business within the jurisdiction of the United States." [D.E. 197, p. 2].

Dr. Aguilar is an active member in the Creation Seventh Day and Adventist Church ("CSDA") and is the owner and operator of the websites www.adventistry.to and www.faithofjesus.to (the "Websites"), two of the websites Plaintiffs seek to specifically identify in the Court's Permanent Injunction. Plaintiffs' information is that in or about 2008/early 2009, Dr. Aguilar and his wife left the United States for Belize. Upon information and belief, he has no intention of returning to the United States.

## ARGUMENT

**1.   The Websites At Issue Contain Infringing Content In Direct Violation Of This Court's Permanent Injunction.**

The Websites contain content that directly infringes upon Plaintiffs' rights in its intellectual property, content which directly violates this Court's Permanent Injunction.[2] For example, multiple websites under the domain name "faithofjesus.to" include a banner image that reads: "Creation Seventh Day Adventist Church."[3] Additionally, the banner at the top of the "Index" webpage, www.faithofjesus.to/index2.html, calls the website "A Free Online Service of Creation Seventh Day Adventists." (*See* collective Exhibit A). Additionally and as example, the domain name of "adventistry.to" is itself infringing, per the Permanent Injunction. *Id.*

**2.   The Aguilars Fled The United States For The Sole Purpose Of Avoiding Being Subject To This Court's Jurisdiction.**

First, what Dr. Aguilar noticeably omits from his Objection is any mention of his previous involvement – or intentional lack thereof – throughout the extensive history of this

---

[2] The language of the Permanent Injunction violated by Dr. Aguilar is fully set forth in Plaintiffs' Motion to Add Further Specifics to the Court's Permanent Injunction Entered May 28, 2009, as Further Defined y Order Entered January 6, 2010. [D.E. 195, p.2].
[3] A true and correct copy of multiple webpages evidencing the infringing content is attached hereto as collective **Exhibit A**.

litigation. Not only has Dr. Aguilar been fully aware of the subject of this litigation from its inception, but he has published on the internet an epistle containing his reasons for fleeing the United States for Belize; namely, to escape having to cooperate with Plaintiffs in this legal proceeding. (*See* Letter of Testimony from Dr. David Aguilar, attached hereto as Exhibit B). Dr. Aguilar states, "Because I am [an] active member of the CSDA Church, I was named as an individual who was sought for questioning in relation to the use of our now 'illegal' (to use human terms) church name." (Ex. B, p. 3 of 7). He then admits that he fled the country so that he would be outside of this Court's jurisdiction and not subject to "questioning in relation to the use" of the infringing trademarks.

Dr. Aguilar's wife is also extensively involved in the CSDA Church, and was listed as the "Distribution" contact on the CSDA Signet, a bi-monthly publication of the CSDA Church,[4] until its last edition (Volume 2, Edition 11).[5] In Volume 2, Edition 8, page 10 contains the following paragraphs:

> Due to an extraordinarily liberal interpretation of the judgment against us, the General Conference's attorneys have succeeded in convincing several internet service providers and domain registrars to hand over or terminate the services of most of our websites and domain names – regardless of who had registered them.
>
> As a result, we have been forced to relocate our website servers to outside of the United States jurisdiction to avoid further loss of time and content. The content remains unaffected by the switch from the user's perspective, however the address is now **www.thefourtheangel.net**. Should some unforeseen persecution be brought against this non-United States site for it's [*sic*] "infringing content" of the Advent Gospel, please access **www.csda-adventistchurch.to** for a fully functioning mirror well outside of U.S. jurisdiction until service is restored.

(*See* Exhibit C). The Aguilars and the CSDA Church are therefore not newcomers to the notion of intentionally disregarding this Court's orders and attempting to use the concept of

---

[4] Of particular note, the CSDA Signet webpage is under the www.faithofjesus.to domain name.
[5] A true and correct copy of The CSDA Signet webpage, as of September 16, 2015, as well as Volume 2, Edition 8 and Volume 2, Edition 11, are attached hereto as collective Exhibit C.

extraterritoriality as a shield to the prohibitions imposed by this Court in the Permanent Injunction.

3.  **This Court Has Jurisdiction To Enforce The Permanent Injunction Against Dr. Aguilar And To Prohibit The Propagation Of His Websites That Contain Infringing Content Into The United States.**

In *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.Supp.2d 281 (S.D.N.Y. 2000) (attached hereto as Exhibit D), the Southern District of New York was faced with issues similar to those currently at bar. In *Versace*, Gianni Versace ("Gianni") moved for a finding of contempt against Alfredo Versace ("A.V.") for violating a preliminary injunction that enjoined A.V. "and all persons in active concert or participation or privity with any of the, who receive actual notice of this Order . . . in the United States of America from registering, attempting to register, using, advertising, marketing, licensing . . . or authorizing the use of any of the Versace Trademarks . . . ." *Id.* at 285. A.V. had maintained various websites overseas that "featur[ed] many of the marks covered by the preliminary injunction." *Id.* at 287.

A.V. argued in its defense that the injunction could not "be applied to actions undertaken outside the United States" and there was therefore no evidence that he violated the injunction. *Id.* at 288. The court determined that "[a]lthough these Internet sites presumably operate from servers in foreign countries, they are accessible by any web browser in the United States." *Id.* at 293. The court found that A.V. had therefore marketed various products bearing the infringing mark on the Internet in violation of the preliminary injunction:

> Despite originating overseas, under federal trademark law, this type of online infringement is deemed to have occurred in the United States, and therefore is plainly covered by the preliminary injunction.

*Id.*

The *Versace* court relied on a 1996 case out of the Southern District of New York that handled a similar issue, affirming that "'merely posting pictorial images on a computer server in Italy' could constitute active solicitation of American customers and distribution in the United States'."[6] The 1996 court added that the Internet does deserve special protection, since it is a "place where public discourse may be conducted without regard to nationality, religion …." *Id.* at 1040. However, it adroitly noted:

> This special protection does not extend to ignoring court orders and injunctions. If it did, injunctions would cease to have meaning and intellectual property would no longer be adequately protected. In the absence of enforcement, intellectual property laws could be easily circumvented through the creation of Internet sites that permit the very distribution that has been enjoined. Our long-standing system of intellectual property protections has encouraged creative minds to be productive. Diluting those protections may discourage that creativity. While this court has neither the jurisdiction nor the desire to prohibit the creation of Internet sites around the globe, it may prohibit access to those sites in *this* country.

*Id.* (Emphasis in original).

The 1996 *Chuckleberry* case also handled the issue of whether "a fifteen-year-old injunction prohibiting certain traditional publishing activities should be applied to the recent development of cyberspace and the Internet." *Chuckleberry*, 939 F. Supp. at 1036. The defendant argued that because the injunction could not have contemplated the widespread use of the Internet as it existed in 1996 (then, a relatively new phenomenon), the injunction did not apply to Internet activity. The court disagreed, and eloquently explained:

> That this use of the images could not have been contemplated by the parties does not prevent the Injunction from applying to the modern technology of the Internet and the World Wide Web. The purpose behind the Injunction was to restrict the ability of Defendant to distribute its product in the United States, where it has been found to infringe upon the trademark of [Plaintiff]. Allowing the Defendant to contravene the clear intent of the Injunction by permitting it to distribute its pictorial images over the Internet would emasculate the Injunction. The Injunction's failure to refer to the Internet by name does not limit its applicability

---

[6] *Id.* at 294 (citing *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 939 F. Supp. 1032, 1039 (S.D.N.Y. 1996) (*See* attached Exhibit E.)).

to this new medium. Injunctions entered before the recent explosion of computer technology must continue to have meaning.

*Id.*

Similar to the method of accessing the content on the defendant's website in *Chuckleberry*[7] and *Versace*, the Websites currently at issue similarly provide widespread access to infringing content, *e.g.*, via downloadable publications, to anyone in the United States with Internet access. (*See, e.g.*, collective Exhibit A). Dr. Aguilar, identically to A.V. and Chuckleberry, has argued that he is merely posting from a computer in Belize and on a server hosted in Belize; and therefore this honorable Court cannot enforce the Permanent Injunction against him. However, Dr. Aguilar is admittedly in active concert or participation with individuals in the United States by his proliferation of infringing content via his Websites.[8]

Dr. Aguilar also argues that his websites do not infringe on the Plaintiffs' trademarks, and therefore are not in violation of the Permanent Injunction. Dr. Aguilar's argument can easily be countered with the case law discussed above that found that the protection afforded by the Internet "does not extend to ignoring court orders and injunctions." Plaintiffs' Motion to Add Further Specifics [D.E. 195] similarly addresses, and even preempts, Dr. Aguilar's unfounded argument. As previously argued in their Motion, the developments, advancements and changes in technology and internet-based communications has rendered an addition of further specifics to the Permanent Injunction necessary and appropriate. Because of such developments, Plaintiffs have met with some difficulty in achieving effective enforcement of their legal rights, and Dr. Aguilar seeks to avoid proper enforcement of the Court's Injunction in his Opposition as is

---

[7] The nature of the content is completely different in *Chuckleberry*, and Plaintiffs do not draw a parallel between the two contents.

[8] *E.g.*, free tapes and literature are available on http://faithofjesus.to/assocsda.html; donations are solicited from the United States on http://faithofjesus.to/evangelism_resources.html; "camp meetings," which upon Plaintiffs' information and belief occur in Guys, Tennessee, are advertised on http://faithofjesus.to/camp_meetings.html; and the http://adventistry.to domain websites use a United States-based e-mail , csda_relief@yahoo.com.

evidenced by his self-proclaimed motives for bringing the Websites to the United States through a foreign server. The specifics sought by Plaintiffs are to make enforcement of the prohibitions in the Court's Permanent Injunction effective in today's Internet environment.

## CONCLUSION

WHEREFORE, premises considered, as a result of developments, advancements, and changes in technology and Internet-based communication, for effective enforcement of the Court's Permanent Injunction, the Plaintiffs now have need of adding the specifics requested in the Motion to Add Further Specifics and accompanying Memorandum of Law. For the reasons previously briefed and set forth herein, Plaintiffs respectfully request that their Motion be granted.

Respectfully Submitted,

 /s/ Philip M. Kirkpatrick
Philip M. Kirkpatrick (BPR No. 6161)
ADAMS AND REESE LLP
424 Church Street, Suite 2700
Nashville, Tennessee  37219
Phone: 615-259-1485
Fax:    615-259-1470
phil.kirkpatrick@arlaw.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      Undersigned counsel for the Plaintiffs hereby certifies that a true and correct copy of the foregoing Motion have been sent to David Aguilar via U.S. First Class Mail as follows, which addresses were determined from the source specified below on this the 18th day of September, 2015, and that Defendant McGill, whose email address is now contained in the Court's ECF database as appearing *pro se*, is expected to receive service via the Court's ECF notification system.

      From the signature block of the Aguilar Objection:

      David P. Aguilar
      P.O. Box 572
      Belmopan City, Belize, C.A.

      /s/ Philip M. Kirkpatrick